UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/18

Anthony Marshall,

                        Plaintiff,

        -against-

Anthony Annucci, *as acting Commissioner of the New York State Department of Corrections and Community Supervision*; et al.,

                        Defendants.

No. 16-cv-8622 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Anthony Marshall commenced this action pursuant 42 U.S.C. § 1983, alleging that he has been sentenced to long-term, cumulative, and continuous terms of solitary confinement[1] while in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and while receiving treatment from the New York State Office of Mental Health ("OMH"), in violation of his Eighth and Fourteenth Amendment rights. (Am. Compl., ECF No. 70.)

Presently before the Court is Defendants' motion to partially dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3), for improper venue, and 12(b)(6), for failure to state a claim. (ECF No. 72.) In the alternative, Defendants request that this action be transferred to either the Northern or Western District of New York. For the

---

[1]     For the purposes of this motion, this Court takes on Plaintiff's definition of "solitary confinement," which refers to Plaintiff's "confinement to a small cell for twenty-three hours per day in disciplinary segregation in DOCCS' Special Housing Unit ("SHU") or under keeplock confinement." (Am. Compl. ¶ 1, n.1.)

following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part and Defendants' motion to transfer the venue of this action is DENIED.

## BACKGROUND

### I.    Factual Background[2]

In March 2011, Plaintiff—a nineteen-year-old inmate at Fishkill Correctional Facility at the time—was sentenced to three months of solitary confinement in the Special Housing Unit ("SHU") for possession of an altered fingernail clipper. (Am. Compl. ¶¶ 6, 63). Plaintiff was subsequently issued dozens of additional disciplinary tickets while he remained in solitary confinement—often "for non-violent behavior symptomatic of [his] deteriorating mental state." (*Id.* ¶¶ 9, 64.) Each new disciplinary ticket led to the imposition of still more solitary confinement sentences on Plaintiff, which all ran consecutively. (*Id.* ¶ 65.) In total, Plaintiff's aggregate penalty grew to eleven years and six months of solitary confinement. (*Id.*)

As a result, Plaintiff was confined in isolation for over four and a half years—in a SHU cell that was approximately six-by-nine feet. (*Id.* ¶ 66.) During his four and a half years of solitary confinement, Plaintiff was permitted only one hour outside of his cell each day. (*Id.* ¶ 68.) Plaintiff spent this "recreation" hour alone, in an outdoor cage approximately the size of his cell. (*Id.*) On occasion, Plaintiff was denied this "recreation hour" as a form of additional punishment. (*Id.* ¶ 69.)

Plaintiff's health deteriorated significantly over the course of his four years in solitary confinement. (*Id.* ¶ 74, 75, 80, 99, 101.) He began to suffer from "hypersensitivity to external

_____

[2]    The following facts are primarily derived from the Amended Complaint and are assumed as true for the purposes of this motion. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

2

stimuli, irritability, visual hallucinations, severe depression, loss of appetite, panic attacks, obsessive thoughts, uncontrollable anger, extreme anxiety, paranoia, and loss of impulse control," (*Id.* ¶ 99.), and he eventually fell into a cycle of self-harm and suicide attempts. (*Id.* ¶ 101.) As a result, Plaintiff was admitted to OMH's Residential Crisis Treatment Programs ("RCTPs") more than a dozen times during his term of solitary confinement. (*Id.* ¶ 80.) RCTPs are meant to provide, immediate, temporary mental health observation and monitoring in order to determine whether the prisoner can be returned to the SHU or if he needs inpatient psychiatric care. (*Id.* ¶ 81.)

Despite his obvious mental deterioration and numerous suicide attempts, DOCCS and OMH officials continued to approve Plaintiff's return to solitary confinement over the period of four years. (*Id.* ¶ 84.) While fully understanding the harm that solitary confinement caused Plaintiff, OMH officials never intervened or attempted to prevent Plaintiff's continuous isolation. (*Id.* ¶ 86.) Further, although they were privy to Plaintiff's severe mental deterioration, OMH officials failed to provide Plaintiff a "Serious Mental Illness" designation ("'S' designation"), which would have precluded him from serving more than thirty days in solitary confinement at a time. (*Id.* ¶¶ 84–91.)

The OMH Defendants were aware of Plaintiff's history of Fetal Alcohol Syndrome, learning disabilities, and psychiatric medications, but failed to request any of his past records to inform his treatment or care. (*Id.* ¶ 120.) Plaintiff pleaded with the OMH Defendants for years to properly diagnose and treat his mental illness, but to no avail. (*Id.* ¶ 121.) In addition to Plaintiff's own pleas for appropriate mental health treatment, counsel for the Prisoners' Legal Services of New York ("PLS") alerted both the DOCCS Defendants and OMH Defendants to Plaintiff's mental health history, his deteriorating condition, and the need for urgent action to

prevent further harm. (*Id.* ¶ 123.)

Finally, in September 2015—after a year and a half of advocacy by PLS on his behalf—Plaintiff was given an "S" designation by OMH officials and transferred to an OMH Behavioral Health Unit ("BHU"). (*Id.* ¶ 129.) OMH cited Plaintiff's suicide attempts and repeated self-injurious behavior as the reason for his designation. (*Id.* ¶ 129.) However, these same factors had existed throughout the years that Plaintiff was repeatedly returned to the SHU from OMH's care. (*Id.* ¶ 130.) Moreover, OMH officials were aware of these factors long before they intervened. (*Id.* ¶¶131-143.) Had the OMH Defendants properly diagnosed and treated Plaintiff, he would have been diverted from solitary confinement years sooner. (*Id.* ¶ 143.)

Plaintiff contends that this behavior on the part of DOCCS and OMH officials continued as he was transferred to different DOCCS facilities and treated by different OMH satellite units in those facilities over the years.[3] (*Id.* ¶ 83.)

Despite his eventual diversion from solitary confinement and "S designation," Plaintiff may still be placed in solitary confinement for periods of up to thirty days. (*Id.* ¶ 88 n.8.) Further, Plaintiff is also continually under the threat of spending more than thirty days in the SHU because OMH may remove his "S" designation at any time. (*Id.* ¶ 288.)

## II. Procedural Background

Plaintiff commenced the present action on November 4, 2016, alleging violations of his Eighth and Fourteenth Amendment rights. (ECF No. 1). Specifically, Plaintiff alleges that the

---

[3]     Plaintiff specifies when he was housed in which facility in the Amended Complaint. (*See* Am.Compl. ¶ 83.) Of particular relevance to this motion, Plaintiff was housed at the Fishkill Correctional Facility between March 15, 2011 and July 2, 2012; the Sullivan Correctional Facility between March 14, 2013 and April 25, 2013; and at the Downstate Correctional Facility between April 25, 2013 and April 26, 2013, and again for portions of June 2013, July 2013, and October 2013. (*Id.*)

acts and omissions of certain DOCCS and OMH Defendants, which resulted in his continuous solitary confinement for over four and half years, evinced Defendant's deliberate indifference to his serious medical needs and constituted cruel and unusual punishment, in violation of his Eighth Amendment rights. (Am. Compl. ¶¶ 300–306.) Plaintiff also contends that certain DOCCS and OMH Defendants further violated his Eighth Amendment rights by subjecting him to grossly disproportionate sentences to solitary confinement that serve no legitimate penological purpose. (*Id.* ¶¶ 307–309.) Plaintiff additionally argues that by repeatedly authorizing his accumulating, consecutive sentences to solitary confinement without any meaningful review, DOCCS and OMH Defendants also violated his Fourteenth Amendment due process rights. (*Id.* ¶¶ 310–312.) Finally, Plaintiff contends that 7 NYCRR § 254.1, which places no limit on the length of time he can be continuously held in solitary confinement and does not require any mitigation based on adolescence or mental health considerations, is unconstitutional as applied to him. (*Id.* ¶ 317–320.)

Defendants moved to dismiss a portion of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(3) for improper venue on August 02, 2017 (ECF No. 72.) In the alternative, Defendants request that the Court transfer this action to either the Northern or Western District of New York. The Court now considers each argument in turn.

## DISCUSSION

### I. Legal Standards

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 678. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* Nor must the Court credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at *679*. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

As to a motion to dismiss for improper venue brought under Rule 12(b)(3), "the burden of proof lies with the plaintiff to show that venue is proper." *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *1 (S.D.N.Y. Feb. 16, 2018) (internal quotations omitted) (quoting *Cartier v. Micha, Inc.*, No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007)). Where no evidentiary hearing has been held, "the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alterations in original) (internal quotation marks omitted). "Such a showing entails making legally sufficient allegations, including an averment of facts that, if credited, would suffice to establish that . . . venue is proper." *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 WL 4997838, at *4 (S.D.N.Y. Oct. 20, 2017) (internal quotation marks omitted) (quoting *BMW of N. Am. LLC v. M/V Courage*, 254 F. Supp. 3d 591, 596 (S.D.N.Y. 2017)). In considering whether venue is proper, the Court "must view[] all facts in the

light most favorable to the non-moving party." *Id.* (internal quotation marks omitted) (quoting *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011)).

Upon a finding of improper venue, a court may either dismiss the action, or "if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Further, "[e]ven when venue is proper in the Southern District of New York, the Court may transfer an action pursuant to 28 U.S.C § 1404(a)." *Fleur v. Delta Air Lines, Inc.*, No. 15-CV-9513, 2016 WL 551622, at *1 (S.D.N.Y. Feb. 2, 2016) (internal quotation marks omitted) (quoting *Solar v. Annetts*, 707 F. Supp. 2d 437, 441 (S.D.N.Y. 2010)). Specifically, § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought . . . ." 28 U.S.C. § 1404 (a).

## II. Analysis

### A. Statute of Limitations

Defendants first argue that because Plaintiff filed the present action on November 4, 2016, "any acts that are alleged to have occurred prior to November 4, 2013, must be dismissed as time barred by the statute of limitations." (Defs.' Mem. of Law in Supp. of Mot. to Dismiss or in the Alternative for Transfer of Venue ("Defs.' Mot.") at 8, ECF No. 73.) This Court disagrees.

Generally, "[t]he statute of limitations applicable to claims brought under . . . [§] 1983 in New York is three years." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). However, "[s]tatutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) (internal quotation marks omitted) ("*Gonzalez I*"). In the context of prisoner rights litigation, the Second Circuit has recognized that the applicable statute

of limitations must therefore "be tolled while a prisoner completes the mandatory exhaustion process." *Id.* at 324. Otherwise, the Second Circuit reasoned, prisoners would face a "catch-22"—either file an action prior to exhausting all administrative remedies and risk dismissal for failure to exhaust, or wait until all administrative remedies are exhausted and risk dismissal based on untimeliness. *Id.* at 323.

Although Defendant is correct that Plaintiff—having filed the instant §1983 action on November 4, 2016—would generally be precluded from raising claims that accrued before November 4, 2013, Defendant has not accounted for the necessary equitable tolling. Because Plaintiff was required to exhaust his administrative remedies prior to bringing suit for his solitary confinement in DOCCS facilities, [4] this Court must account for the period during which Plaintiff "was actively exhausting [his] claims." *Id.* at 324.

Generally, a person detained or incarcerated at a DOCCS facility must exhaust all steps of the Inmate Grievance Resolution Program ("IGRP"). *See Robinson v. Henschel*, No. 10-CV-6212 (PGG), 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014). The IGRP provides "a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal

---

[4]     Under the Prison Litigation Reform Act of 1995 (" PLRA " ), " [n]o action shall be brought with respect to prison conditions under section 1983 . . .  or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).  This exhaustion requirement "applies 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Kearney v. Gebo*, No. 17-CV-218 (PR), 2017 WL 5256820, at *1 (2d Cir. Nov. 13, 2017) (summ. order) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, (2002)).

an adverse decision by the superintendent to the Central Office Review Committee (" CORC ")".

*Espinal v. Goord*, 558 F.3d 119, 125 (2d Cir. 2009).

Plaintiff alleges that he commenced the grievance process in October 2014. (Am. Compl. ¶ 295.) The final step of that process—Plaintiff's CORC appeal—was not completed until nearly four months later, on February 18, 2015. (*Id.*) Accounting for Plaintiff's mandatory exhaustion efforts, the statute of limitations for his claims must be tolled four months.[5] Thus, Plaintiff may rightfully raise claims in this action that accrued on or after July 2013—or four months prior to November 2013.[6] The court now turns to the question of when Plaintiff's present claims accrued.

Section 1983 claims typically accrue "when the plaintiff knows or has reason to know of the injury which is the basis for his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted). One notable exception, however, is the "continuing

---

[5]    Plaintiff's "emergency appeal[s] and request[s] for immediate release from the SHU" directed at various DOCCS and OMH officials, (*see* Am. Compl. ¶¶ 123, 124, 296), do not similarly toll the applicable statute of limitations. The Second Circuit has only extended equitable tolling "while a prisoner completes the *mandatory* exhaustion process." *Gonzalez I*, 324 F.3d at 324 (emphasis added). Plaintiff's informal requests, however, are not a part of DOCCS' grievance procedure, and are thus not mandatory under the PLRA. *See Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) ("'[I]t is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion.' The exhaustion inquiry thus requires that [the Court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007) (emphasis added)).

[6]    The Court notes that this equitable tolling *may* be inapplicable to Plaintiff's claims against the OMH Defendants, as Plaintiff was not necessarily required to grieve those claims through the DOCCS IGRP. *Compare Jones v. Rock*, No. 12-CV-0447 (NAM) (TWD), 2015 WL 791547, at *15 (N.D.N.Y. Feb. 24, 2015) ("Grievances involving actions taken by OMH have in at least some instances been determined by DOCCS to be outside the jurisdiction of the DOCCS IGP. . . .") *with Pack v. Ross*, No. 05-CV-9914 (LBS), 2006 WL 271411, at *3 (S.D.N.Y. Sept. 21, 2006) (dismissing plaintiff's claims against OMH officials for failure to exhaust the IGRP process). However, because the parties did not fully brief the issue and because it ultimately does not affect the disposition of this particular motion, the Court does not reach the question of whether Plaintiff is entitled to equitable tolling for *all* of his claims.

violation doctrine." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) ("*Gonzalez II*"). Under the continuing violation doctrine, where a claim requires that Plaintiff be "subjected to some threshold amount of mistreatment," "the limitations period begins to run when the defendant has engaged in enough activity to make out an actionable . . . claim." *Id.* (internal quotation marks omitted). Notably, the continuing violation doctrine applies only to claims "composed of a series of separate acts that collectively constitute one unlawful [ ] practice"—it does *not* apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation[ ]." *Id.* (internal quotation marks omitted).

Here, Plaintiff argues that Defendants, "through a series of collective acts and omissions" subjected him to over four years of solitary confinement, despite his deteriorating mental health, in violation of the Eighth Amendment. (Pl.'s Mem. of Law in Opp. to Defs.' Mot. to Dismiss or in the Alternative for Transfer of Venue ("Pl.'s Opp.") at 8, ECF No. 76.) These alleged violations of Plaintiff's rights, counsel further argues, "continued at least through September of 2015, when [Plaintiff] received his "S" designation and was diverted from solitary confinement." *Id.* Because the constitutional violations have been ongoing, Plaintiff maintains that the Court may consider all of Defendants' actions, including those that preceded this action by more than three years.

There is no question that the continuing violation doctrine *may* apply to Eighth Amendment claims like the one raised by Plaintiff in this action. Indeed, the Second Circuit has explicitly ruled that Eighth Amendment claims premised on a prisoner's length and conditions of confinement in the SHU are subject to the continuing violation doctrine. *Gonzalez II*, 802 F.3d at 224. The Second Circuit has cautioned, however, that simply because "the continuing violation doctrine *can* apply, [ ] does not mean it must." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d

Cir. 2009). Rather, to establish "a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy . . . and some non-time barred acts taken in furtherance of that policy." *Id.*

Defendants contend that the continuing violation doctrine cannot apply to Defendants Krawec, Dr. Lee, or Dr. Ahmed because Plaintiff fails to allege any wrongful acts specifically taken by those Defendants within the statutory period.[7] (Defs.' Mot. at 8.) Plaintiff counters that he has generally alleged: (1) a series of acts or omissions that, in the aggregate, comprise each of his claims; (2) that these acts or omissions were committed in furtherance of DOCCS and OMH polices and practices; and (3) that the violations of his rights continued at least through September 2015—well within the statutory period. (Pl.'s Opp. at 9.) He need not, Plaintiff further argues, specifically "show what actions were taken by which defendants and when" at this stage in the litigation. *Id.*

Plaintiff, however, misses the mark. While he need not *show* which Defendants took what actions and when on a motion to dismiss, he must *allege* that a particular defendant committed at least one wrongful act within the statutory period to state a claim against that defendant. *See Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) (finding that even where the continuing violation doctrine could otherwise apply, a claim must be dismissed where there is "no allegation and no evidence" that a defendant committed a wrongful act within the statute of limitations period) ("*Wright*"); *see also Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir. 1994) (A court must "consider[ ] specifically as to each defendant at what point [the plaintiff] ha[s] a

---

[7]     Defendants also contend that this same analysis applies to Defendants Mayer and Waldron. However, because each of these Defendants served as OMH Unit Chiefs at facilities where Plaintiff was housed on or after November 2013, Defendant's statute of limitations argument is inapposite. (*See* Am. Compl. ¶ 83.)

compensable claim . . . .").

Indeed, the Second Circuit's decision in *Shomo v. City of New York*, 579 F.3d 176 (2009), underscores that a court must engage in the continuing violation analysis as to each individual defendant. In *Shomo*, the Second Circuit recognized that the continuing violation doctrine may apply to prisoners' Eighth Amendment claims, but nonetheless upheld the district court's dismissal of claims against defendants whose last contact with plaintiff was outside of the statute of limitations period. *Id.* at 184. In so deciding, the Court "made clear that in order for the continuing violation doctrine to apply, plaintiff need[s] to show that those specific individuals committed at least one wrongful act within the statutory time period." *Wright*, 665 F. Supp. 2d at 350.

Here, Plaintiff fails to allege *any* wrongful acts committed by Defendants Ahmed, Lee, or Krawec during the statute of limitations period—even when accounting for equitable tolling. Indeed, the only allegations against Defendant Krawec is that he is the Unit Chief at Fishkill Correctional Facility. Plaintiff, however, was housed at Fishkill between March 2011 and July 2012—which falls nearly a full year outside of the statute of limitations period. (Am. Compl. ¶ 83.) Similarly, Defendant Ahmed's last alleged contact with Plaintiff dates back to March 2013 (*Id*. ¶¶ 132–134)—more than three months outside of the statute of limitations period— and his last alleged contact with Defendant Lee was in April 2013. (*Id.* ¶ 227.)

Moreover, Plaintiff's threadbare allegation that "each Defendant committed acts in furtherance of [the] unconstitutional policies and practices throughout [his] four and a half years in solitary confinement" (Am. Compl. ¶ 7), without more, is insufficient to shield his claims against dismissal. Such an allegation provides no factual context from which the court may infer that any particular Defendant engaged in wrongful conduct within the limitations period.

Because Plaintiff fails to plausibly allege any involvement by Defendants Krawec, Ahmed, and Lee in any constitutional violation during the statute of limitations period, his claims against those Defendants are dismissed as time-barred.

## B. Injunctive and Declaratory Relief

### i. *Eleventh Amendment immunity*

Defendants next seek dismissal of Plaintiff's claims for injunctive and declaratory relief against DOCCS and OMH officials in their official capacities pursuant to the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Further, the Eleventh Amendment "has, of course, been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns . . . ." *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 20 (2d Cir. 2004). "Under the well-known exception to this rule first set forth in *Ex parte Young*, 209 U.S. 123 (1908) [ ], however, a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Employees Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted). "In determining whether the  doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted) (alteration in

original).

In the present action, Defendants contend that "Plaintiff's claims against the current and former DOCCS and OMH officials must be dismissed as Plaintiff seeks injunctive relief for past actions." (Defs.' Mot. at 15.) This Court disagrees and finds that Plaintiff's claims fall within the *Ex parte Young* exception to the Eleventh Amendment.

Plaintiff's requests for injunctive and declaratory relief all relate to the risk he faces of again being subjected to lengthy terms of solitary confinement. Although Defendant has now been given an "S" designation and can no longer serve more than thirty days in solitary confinement at a time (Am. Compl. ¶ 20, n.8), there is nothing precluding Defendants from removing this designation and continuing to enforce Plaintiff's near eleven-year solitary confinement sentence. (*Id.* ¶ 288.) To the extent that Plaintiff's requested declaratory and injunctive relief is designed to prevent that future harm, it is prospective in nature. *See Doe v. Annuci*, No. 14-CV-2953 (PAE), 2015 WL 4393012, at *16 (S.D.N.Y. July 15, 2015) (recognizing that a claim seeking to enjoin DOCCS from enforcing a special parole condition was prospective, even if the condition was no longer being enforced at the time of the litigation).

Because Plaintiff's sought relief may properly be characterized as prospective, the only remaining question is whether the Amended Complaint alleges an "ongoing violation of federal law." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Although Plaintiff is not currently subject to prolonged periods of solitary confinement, Defendants may, at any time, "remove his "S" designation . . . which would result in his being returned to the SHU." (Am. Compl. ¶ 288.) The propriety of Plaintiff's claims, thus, turns on whether the possibility or threat of a *future* constitutional violation suffices to render that violation ongoing.

This Court finds that it does.

"Neither the Supreme Court nor the Second Circuit has directly addressed whether a violation that is not currently in progress may nevertheless be considered 'ongoing' where the possibility of a future violation exists." *Babyrev v. Lanotte*, No. 16-CV-5421 (ER), 2018 WL 388850, at *4 (S.D.N.Y. Jan. 11, 2018). However, other circuit courts and district courts in this circuit have held that "the challenged action need not literally 'be in progress' to defeat a claim of sovereign immunity; rather, 'where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." *Doe*, 2015 WL 4393012, at *16 (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999)); *Babyrev*, 2018 WL 388850, at *4–5 (same); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001) ("The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional law is threatened, even if the threat is not yet imminent."); *Vickery v. Jones*, 100 F.3d 1334, 1346 (7th Cir, 1996) ("[T]he *Young* exception permits relief against state officials only when there is an ongoing *or threatened* violation of federal law." (emphasis added)).

Moreover, this conclusion is "consistent with the Supreme Court's admonition that *Young* distinguishes between cases 'in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation." *Doe*, 2015 WL 4393012, at *16 (quoting *Papasan v. Allain*, 478 U.S. 265, 277—78 (1986)); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interest are insufficient to overcome the dictates of the Eleventh Amendment." (internal citations omitted)).

"In other words, whether a violation is 'ongoing' and whether a Plaintiff's requested relief is properly characterized as 'prospective' are closely related questions, and the nature of the relief requested can shed light on whether the violation is ongoing." *Babyrev*, 2018 WL 388850, at *5; *see also Summit Med. Assocs., P.C.*, 180 F.3d at 1338 ("[T]he ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, i.e., designed to prevent injury that will occur in the future, and cases where relief is retrospective.").

Here, "Plaintiff resolves any lingering doubt that he alleged an ongoing violation of federal law" by requesting relief that can appropriately be categorized as prospective. *Babyrev*, 2018 WL 388850, at *5. Plaintiff's claims for prospective injunctive and declaratory relief, thus, fall under the *Ex Parte Young* exception and are not barred by the Eleventh Amendment.

### ii. *Retired DOCCS and OMH Officials*

Defendants further contend that, even if Plaintiff's request for prospective declaratory and injunctive relief is proper, the retired DOCCS and OMH officials must be dismissed from this action. (Defs.' Mot. at 18.) This Court agrees.

"In order to survive a motion to dismiss [a] request[] for injunctive relief, a plaintiff must allege that the state official has the authority to grant the relief sought." *Babyrev*, 2018 WL 388850, at *5 (citing *Hall v. Marshall*, 479 F. Supp. 2d 304, 318 (E.D.N.Y. 2007) (holding that plaintiff's claim for injunctive relief could not proceed because plaintiff failed to allege that defendants had the authority to grant relief sought); *see also Loren v. Levy*, No. 00-CV-7687 (DC), 2003 WL 1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("An injunction may issue only in circumstances where the state official has the authority to perform the required act." (internal quotation marks omitted)), *aff'd*, 120 F. App'x 393 (2d Cir. 2005).

The retired Defendants do not have the authority to rectify any ongoing constitutional violations. Accordingly, Plaintiff cannot appropriately seek prospective injunctive or declaratory relief against them. To the extent that Plaintiff is seeking equitable relief that is not prospective against these, or any other Defendants in their official capacities, such claims would be barred by the Eleventh Amendment. *See Clark v. DiNapoli*, 510 F. App'x 49, 51 (2d Cir. 2013) (summ. order) ("A plaintiff may not use [the *Ex parte Young*] doctrine to adjudicate the legality of past conduct" (citing Papasan, 478 U.S. at 277–78)). Therefore, Plaintiff's claims against the retired DOCCS and OMH Defendants *in their official capacities* are dismissed.[8]

### C. Claims Against Unit Chief Mayer—monetary damages

Defendants next contend that Plaintiff fails to adequately allege the personal involvement of Defendant Mayer in any constitutional violation. (Defs.' Mot. at 19.) This Court disagrees.

While Defendant Mayer enjoys a supervisory role as an OMH Unit Chief, "a defendant in a §1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Rather, "a plaintiff must establish a given defendant's *personal involvement* in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir.) (emphasis added) (internal quotation marks omitted), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016). As the Second Circuit has explained, the personal involvement of a

---

[8] Because Plaintiff does not assert any further claims against the following Defendants, they are dismissed from this action: Brian Fischer, Dr. Lester Wright, Albert Prack, John Tauriello, Kristen Woodlock, Michael Hogan, Peter Russell, Maureen Bosco, Donald Sawyer, William Connolly, Steven Racette, Michael Sheahan, John Lempke, and Joseph Noeth.

supervisory defendant may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Courts in this Circuit, however, are "divided as to whether the five categories announced in *Colon* may still be used as the bases for liability under § 1983" following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517 at *6 (S.D.N.Y. Sept. 07, 2017). In *Iqbal,* the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."556 U.S. at 676 (2009). In so holding, the Court explicitly rejected the argument that, "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 677. The Court noted however, that the required showing of personal involvement "will vary with the constitutional provision at issue." *Id*. at 676.

The Second Circuit has not squarely addressed how *Iqbal*, which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," affects the standards in *Colon* for establishing liability. *Allah,* 2017 WL 3972517 at *6 (internal quotation marks and citations omitted); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set for in *Colon v. Coughlin*."

(internal citation omitted)). Overall, however, "[t]he majority of the district courts . . . have held that, absent any contrary directive for the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah*, 2017 WL 3972517 at *6 (internal quotation marks omitted) (collecting cases) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)). This Court has already expressed its agreement with that proposition, and will apply it with equal force here. *See Corbett v. Annucci*, No. 16-CV-4492 (NSR), 2018 WL 919832, at *6, n.5 (S.D.N.Y. Feb. 13, 2018); *Matteo v. Perez*, No. 16-CV-1837 (NSR), 2017 WL 4217142, at *5 (S.D.N.Y. Sept. 19, 2017).

Because Plaintiff's present claim against Defendant Mayer is based on his allegedly *deliberate indifference* to Plaintiff's mental health needs, the Court will apply all five *Colon* factors. *See Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply."); *Marom v. City of New York*, No. 15-CV-201 (PKC), 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016), *partially reconsidered on separate grounds*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016) ("The holding in *Iqbal* does not stand for the proposition that a supervisor can never be found personally liable for a constitutional deprivation on a showing that he was "grossly negligent" or "deliberately indifferent." It only requires that a supervisor's action—whether direct or through 'his or her superintendent responsibilities'—must itself violate the terms of the constitutional provision at issue.").

Here, Plaintiff sufficiently alleges the personal involvement of Defendant Mayer under the third *Colon* factor: through his supervision of Plaintiff's psychiatric treatment, Defendant Mayer allowed policies and practices to persist that allegedly subjected Plaintiff—an adolescent suffering mental illness at the time—to four and a half years in solitary confinement. Specifically, Plaintiff contends that Defendant Mayer is the OMH Unit Chief at Auburn Correctional Facility. (Am. Compl. ¶ 51.) As an OMH Unit Chief, Defendant Mayer "supervised [Plaintiff's] treatment and oversaw all treatment provided by OMH staff to prisoners within the [Auburn] Satellite Unit." (*Id.* ¶¶ 50, 83.) Further, Defendant Mayer had the authority to confer an "S" designation to Plaintiff. (*Id.* ¶ 127.) According to Plaintiff, Defendant Mayer was aware of Plaintiff's deteriorating mental health, but repeatedly failed to diagnose him as seriously mentally ill, "permitting his continual return from suicide watch directly to solitary confinement." (*Id.* ¶¶ 60, 86, 119–120.) Notably, Plaintiff claims that OMH has exhibited a pattern on "cycling [ ] its mental health patients between solitary confinement and [Residential Crisis Treatment Programs]."[9] (*Id.* ¶ 162 n.30.) Such an allegation, if true, plausibly suggests the existence of a policy or custom—directly within the control of Defendant Mayer as an overseer of prisoners' treatment and mental health designations—that may have allowed for violations of Plaintiff's constitutional rights. Accordingly, this Court finds that Plaintiff has sufficiently plead the involvement of Defendant Mayer to survive a motion to dismiss. *See Rossi v. Fishcer*, 13-CV-3167 (PKC) (DF), 2015 WL 769551, at *16 (S.D.N.Y. Feb. 24, 2015) (finding sufficient personal involvement where plaintiff alleged that defendants "had the authority to approve policies governing the religious programs in DOCCS," but allegedly failed to make religious

---

[9]       The Amended Complaint notes, for instance, that the number of patients being sent from the Residential Crisis Treatment Programs back to SHU has risen by 29% since 2007. (Am. Compl. ¶ 162 n.30.)

accommodations for Rastafarian prisoners); *Pugh v. Goord*, 571 F. Supp. 2d 477, 513 (S.D.N.Y. 2008) (finding sufficient personal involvement under *Colon* where plaintiff alleged that defendants made "certain contributions" to the "formulation of policy," even though defendants were not "the ultimate authority.").

### D. Venue

#### i. *Proper venue*

Finally, Defendants contend that this action should be dismissed for improper venue. (Defs.' Mot. at 10.) Under 28 U.S.C. § 1391(b), venue is generally appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See also Albergo v. Pearlman*, No. 07-CV-2285 (GBD), 2011 WL 102749, at *3 (S.D.N.Y. Jan 10, 2011).

This Court finds that venue is indisputably proper in the Southern District of New York. First, both parties appear to agree that at least one defendant—Dr. Merino—has her official residence in this District (Defs.' Mot. at 11.) Further, the only two Defendants identified as living out of state are former Commissioner Fischer and former DOOCS Deputy Commissioner and Chief Medical Officer, Dr. Wright. (Decl. of Nancy Heywood in Supp. of Defs.' Mot to Dismiss the Am. Compl. or in the Alternative for Transfer of Venue ("Heywood Decl.") ¶ 4, ECF No. 75). Both Defendants Fischer and Wright, however, have been dismissed from this action, *see supra* Section II.B.ii, rendering their place of residence irrelevant. Because all remaining Defendants reside in New York, venue is proper in any judicial district in this state

where any of the Defendants reside—including the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1).

Further, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2). The Second Circuit has recognized that "[§]1391(b)(2) does not restrict venue to the district in which the '*most* substantial' events or omissions giving rise to a claim occurred." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (emphasis added). Rather, §1391(b)(2) "contemplates that venue can be appropriate in more than one district and permits venue is multiple judicial district as long as a substantial part of the underlying events took place in those districts." *Id.* (internal quotation marks omitted). Notably, "[s]ubstantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* At 432–433. Rather, in assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute. "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and thus, substantial, but when the close nexus is lacking, so too is the substantiality necessary to support venue." *Id.*

Here, Plaintiff alleges that he was subjected to solitary confinement, in deliberate indifference to his mental health, at Fishkill, Sullivan, and Downstate Correctional Facilities— each of which is located in the Southern District of New York. (Am. Compl. ¶ 83.) Further, after accounting for equitable tolling, his solitary confinement at Downstate Correctional Facility indisputably occurred within the statute of limitations period.[10] Plaintiff's continued solitary

---

[10]     Plaintiff was most recently housed at Downstate Correctional Facility in October of 2013. (Am. Compl. ¶ 83.) As this Court has noted, accounting for equitable tolling, Plaintiff may assert

confinement during the limitations period in this District bears a sufficiently "close nexus" to his underlying Eighth and Fourteenth Amendment claims to render it "substantial" for venue purposes. Accordingly, venue is proper in this District under 28 U.S.C. § 1391(b)(2).

ii. *Transfer*

Finally, Defendants ask that even if this Court finds venue to be proper in the Southern District of New York, that this action be transferred either to the Northern or Western District of New York. However, this Court finds transfer of this action inappropriate at this time.

"Even where venue is proper [ ], the Court may transfer an action pursuant to 28 U.S.C. § 1404(a)" for the convenience of parties and in the interest of justice. *Fleur v. Delta Air Lines, Inc.*, No. 15-CV-9513, 2016 WL 551622, at *1 (S.D.N.Y. Feb. 2, 2016). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Ultimately, however, "the party requesting transfer carries the burden of making out a strong case for transfer." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

In considering such a motion for transfer of venue, Courts must engage in a two-part inquiry. First, the Court must consider "whether the action could have been brought in the proposed transferee forum; and second, whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Solar*, 707 F. Supp. 2d at 442 (internal quotation marks omitted).

The first prong of the inquiry is satisfied here. Plaintiff could have properly filed this

_____

claims against the DOCCS Defendants that accrued on or after July 2013. *See supra* Section II.A.

action in either the Northern or Western District of New York— numerous Defendants reside in those districts and Plaintiff was housed in facilities located in each district. (*See* Am. Compl. ¶ 83; Decl. of Mark Noordsy in Supp. of Defs.' Mot to Dismiss the Am. Compl. or in the Alternative for Transfer of Venue ("Noordsy Decl.") ¶ 3, ECF No. 74.)

With regard to the second prong, Courts typically consider "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of the operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co.*, 599 F.3d at 112 (internal quotation marks omitted).

The first factor—plaintiff's choice of forum—weighs heavily against transfer. "Traditionally, Plaintiffs' choice of forum is given great weight in the Court's analysis, and should not be disturbed unless the factors clearly tip in favor of transfer." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-CV-7638 (CM), 2018 WL 898230, at *4 (S.D.N.Y. Feb. 5, 2018); *see also Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) ("[A] plaintiff's choice of forum is presumptively entitled to substantial deference.").

Here, Defendants fail to satisfy their burden of overcoming this deference to Plaintiff's choice of forum. First, although Defendants generally claim that a number of witnesses are located in either the Western or Northern Districts of New York, they fail to identify even one witness that would be unduly inconvenienced by having to present testimony in the Southern District of New York. While a failure to identify key witnesses may not be fatal to a motion for transfer where there are other grounds for a change of venue, *see Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 856 (S.D.N.Y. 2017), Defendants' vague pronouncements are insufficient to tip

this factor in their favor. *See Medien Patent Verwaltung AG v. Warner Bros. Entm't*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) ("[w]hen a party seeks the transfer on account of the convenience of witnesses under 1404(a), [they] must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (internal quotation marks omitted)).

The location of Plaintiff's "medical and mental health records" similarly does not weigh in favor of transfer. "Given electronic discovery, and absent any concrete illustration of inconvenience to either side relating to documents or other non-testimonial evidence, this factor is neutral." *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 217 (S.D.N.Y. 2017); *see also Guardian v. Life Ins. Co. of Am. v. Hernandez*, No. 11-CV-2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) (finding that this factor did not favor either side because modern technology has made the transportation of documents relatively easy).

Further, Defendants' argument that this action should be transferred to accommodate the Defendants who reside outside of this District is equally unavailing. While Defendants identify a number of parties in this action who reside in the Northern and Western Districts of New York, they neglect to address the parties who reside in this District. (*See* Def.'s Mot. at 11.) Defendants offer no justification why the burden of traveling should be shifted from the parties outside of the Southern District of New York to the parties that do reside in this District. *See Bryant*, 2018 WL 898230, at *2 (noting that a court generally "will not simply shift the inconvenience from one party to another"). Further, the burden of travel is not too concerning to this Court given the relative proximity of the current forum and the proposed transferee Districts. *See Prof'l Offshore Opportunity Fund, Ltd. v. Huifeng Bio-Pharm. Tech., Inc.*, No. 11-CV-4321 (LAK), 2011 WL 5598213, at *3 (S.D.N.Y. Nov. 15, 2011) ("There is no compelling argument that the

convenience of parties and witnesses and the interests of justice would be served by moving this action from a courthouse at one end of the Brooklyn Bridge to the other, or for that matter, even a courthouse in Central Islip.").

Because Defendants offer no other justifications, this Court finds that transfer pursuant to §1404(a) is inappropriate at this juncture.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to transfer venue is DENIED.

All claims against Defendants Krawec, Lee, and Ahmed are dismissed, as are all claims for injunctive or declaratory relief against the retired OMH and DOCCS officials—including Brian Fischer, Dr. Lester Wright, Albert Prack, John Tauriello, Kristen Woodlock, Michael Hogan, Peter Russell, Maureen Bosco, Donald Sawyer, William Connolly, Steven Racette, Michael Sheahan, John Lempke, and Joseph Noeth. The Clerk of the Court is respectfully directed to terminate the aforementioned Defendants from this action and to terminate the motion at ECF No. 72.

The parties shall appear for a conference on April 27, 2018 at 12:00PM. The parties are directed to complete the attached case management plan and submit a copy to chambers in advance of the scheduled conference. The remaining Defendants are further directed to file an answer to the Amended Complaint before April 27, 2018.

Dated:  March 22, 2018
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

26

Rev. May 2014

-------------------------------------------------------------x

                                 Plaintiff(s),

- against -

                                 Defendant(s).

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

_____ CV _____ (NSR)

-------------------------------------------------------------x

     This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
_____.

7.    Non-expert depositions shall be completed by _____.

    a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

_____


_____
Nelson S. Román, U.S. District Judge